**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: September 1, 2023
Date Decided: September 8, 2023

Srinivas M. Raju, Esquire
Kyle H. Lachmund, Esquire
Naseeba Saeed, Esquire
Richards, Layton & Finger, PA
920 North King Street
Wilmington, Delaware 19801

Lewis H. Lazarus, Esquire
Albert J. Carroll, Esquire
Barnaby Grzaslewicz, Esquire
Samuel E. Bashman, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801

Kenneth J. Nachbar, Esquire
Megan Ward Cascio, Esquire
Alexandra M. Cumings, Esquire
Emily C. Friedman, Esquire
Morris, Nichols, Arsht &
 Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801

RE: *Enhabit, Inc., et al. v. Nautic Partners IX, L.P., et al.*,
 C.A. No. 2022-0837-LWW

Dear Counsel:

This letter decision considers the plaintiffs' motion to compel the production

of certain documents withheld or redacted by the defendants as privileged. The

plaintiffs insist that the documents cannot be privileged since they were shared with

a third party and her counsel (who also represented the defendants). The defendants,

in response, argue that a common interest or joint client privilege attached.

After considering the categories of documents at issue, I conclude that each side is partly right. Communications with the third party about her restrictive covenants must be produced because the parties' mutual interests were primarily commercial—not legal. But the defendants' privileged exchanges with counsel about the structure and governance of their new business are protected unless they were disclosed to the third party. My reasoning is described below.

## I. BACKGROUND

This litigation concerns Encompass Home Health & Hospice (together with its then subsidiaries, "Encompass Health") and a competitor called VitalCaring Group (the "New Venture"). It follows litigation in Texas state court where Encompass Health's former CEO, April K. Anthony, was found to have violated certain restrictive covenants in her employment agreement.[1] The present litigation brings claims for breach of fiduciary duty, aiding and abetting, and usurpation of corporate opportunity against individuals and entities that allegedly conspired with Anthony to form the New Venture.

Around late 2020 and early 2021, private equity firms Nautic Partners, LLC (with Nautic Partners IX, L.P., "Nautic") and The Vistria Group, LP (with Vistria

---

[1] Verified Am. Compl. (Dkt. 62) ("Am. Compl") ¶¶ 11, 13, 100-02. My description of the background is drawn from the complaint and the limited record submitted in connection with the present motion. In providing context for my analysis, I am not making findings of fact.

Fund III, LP, "Vistria") purportedly began exploring a partnership in the home healthcare and hospice space with the advice of counsel at Ropes & Gray LLP.[2] The same lawyers at Ropes had previously (separately) represented Anthony and Vistria on unrelated matters.[3]

In January 2021, Ropes advised Anthony, Nautic, and Vistria on a joint bid to acquire Encompass Health.[4] The bid expired by its terms on February 12, 2021.[5] The defendants assert that Ropes continued to advise Nautic and Vistria, along with Anthony, after efforts to acquire Encompass Health ceased. At that point, the focus of Nautic and Vistria (and perhaps Anthony) shifted to exploring the formation of the New Venture.

---

[2] Pls.' Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged (Dkt. 238) ("Pls.' Mot.") Ex. 2.

[3] Pls.' Mot. ¶ 3 (describing Ropes as Anthony's "longtime personal counsel"); Defs. Vistria Fund III, LP, The Vistria Group LP, TVG NP Homecare Topco, LP, and C. Walker's Opp'n to Pls.' Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged and Joinder in the Nautic Defs.' Opp'n to Mot. to Compel (Dkt. 281) ("Vistria Defs.' Opp'n") ¶ 2 (describing Ropes as "Vistria's long-time counsel" on "other matters and transactions").

[4] Nautic Defs.' Opp'n to Pls.' Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged (Dkt. 283) ("Nautic Defs.' Opp'n") Ex. 5 (Jan. 13, 2021 bid letter); *see also* Nautic Defs.' Opp'n Ex. 3 (Jan. 2021 email describing Anthony, Vistria, and Nautic as Ropes' "clients").

[5] Nautic Defs.' Opp'n Ex. 5.

As early as December 2020, Nautic and Vistria began preparing a draft term sheet for the New Venture.[6] The initial draft term sheet addressed, among other things, the amount of equity to be contributed by the investors (including a "Founding Manager"), governance terms, the terms of a management equity incentive plan, and the amount of the Founding Manager's compensation.[7] Other iterations of the term sheet were prepared in February 2021 and exchanged among Ropes, Nautic, and Vistria, along with an outline Ropes prepared analyzing Anthony's restrictive covenants.[8] Both the draft term sheet and outline were sent by Ropes to Anthony on February 24 and 25.[9]

---

[6] Nautic Defs.' Opp'n Ex. 6 (draft term sheet for "Newco").

[7] *Id.*

[8] Pls.' Mot. Ex. 8 ("Nautic Privilege Log") at Row 103 ("Confidential email chain requesting and providing confidential legal advice from outside counsel regarding multiple provisions of NewCo term sheet, including board grants, anti-dilution, resignation and MEIP vesting provisions."); *e.g.*, *id.* at Rows 103-05, 108-11, 113-128, 130-34, 302-05, 1642-43. Ropes prepared another memorandum regarding Anthony's restrictive covenants and sent it to Nautic and Vistria in March 2021. Nautic Privilege Log at Rows 148-49. Vistria withheld the same (or similar) documents pertaining to Anthony's restrictive covenants. Pls.' Mot. Ex. 7 ("Vistria Privilege Log") at Row 145 ("Confidential document drafted by Ropes & Gray providing legal advice re: restrictive covenants in April Anthony's employment agreement."); *e.g.*, *id.* at Rows 113, 161-63, 176, 181-83, 188-89, 229-36, 240, 243-44. Vistria also withheld draft term sheets and redacted related communications. *E.g.*, *id.* at Rows 148-60, 164-70, 174-75, 177-80, 184-87, 190-202.

[9] *E.g.*, Nautic Privilege Log at Rows 300-01 (describing documents as containing legal advice "regarding restrictive covenant terms" in Anthony's employment agreement); *id.* at Rows 333, 375.

In March, Anthony announced her intention to resign from Encompass Health, effective June 18, 2021.[10]

By April and May, Ropes was advising Vistria and Nautic on the formation of an entity (Topco) to facilitate the acquisitions of three home healthcare businesses later consolidated into the New Venture: Homecare Holding, Vital Caring, and Kare-in-Home.[11] Anthony was involved in certain discussions about the New Venture during this time.[12] On May 24, Nautic executed an engagement letter with Ropes contemplating that Nautic and Vistria would be the firm's joint clients.[13] Work on Topco's acquisition of the three companies continued throughout the remainder of the year.

In June and July, Ropes communicated with Nautic and Vistria about the organizational structure for Topco. Their exchanges focused on options for entities affiliated with the newly-acquired companies—such as the creation of "Sponsorco" to sit above Topco, the entities' corporate forms, and rollover equity for certain acquired companies.[14] Separately, in July, Ropes and Anthony emailed about the

---

[10] Am. Compl. ¶ 8.

[11] *See id.* ¶ 51. Topco is TVG NP Homecare Topco, LP.

[12] *E.g.*, Pl.'s Mot. Ex. 14.

[13] Nautic Defs.' Opp'n Ex. 10 (engagement letter). It seems that Vistria had long engaged Ropes and did not sign a new engagement letter at this time.

[14] *See, e.g.*, Nautic Privilege Log at Rows 207-09, 224, 262, 1250-52, 1276-78, 1488, 1490, 1492, 1501-04, 1512, 1612, 1804; Vistria Privilege Log at Rows 658, 1793, 2144, 2605;

noncompete provision in her Encompass Health employment agreement.[15] This email morphed into a chain among Ropes, Nautic, and Vistria (excluding Anthony) on the same subject.[16]

Anthony's noncompete covenant (as reformed by the Texas court) expired on June 18, 2022.[17] In mid-August 2022, Anthony funded her investment and was publicly named the CEO of the New Venture.[18] This litigation was filed the next month, on September 19.[19]

---

*see also* Pls.' Reply in Supp. of Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged (Dkt. 304) ("Pls.' Reply") Ex. 32 (email chain among Ropes, Vistria, and Nautic regarding "equity documents"); Tr. of Oral Arg. on Pls.' Mot. to Compel (Dkt. 311) ("Hr'g Tr.") 54-56.

[15] *See* Nautic Privilege Log at Row 289 ("Confidential email chain requesting and providing confidential legal advice from outside counsel regarding parameters of non-compete provisions in A. Anthony's employment agreement."). Counsel for Nautic represented at oral argument that the early portions of the chain included Anthony. *See* Hr'g Tr. 44. Nautic's privilege log reflects the top chain exchange that excluded Anthony.

[16] Nautic Privilege Log Row 289.

[17] Opening Br. in Supp. of Defs. Nautic Partners IX, L.P., Nautic Partners, LLC, and C. Corey's Partial Mot. to Dismiss (Dkt. 95) Ex. 1 (Findings of Fact and Conclusions of Law) ¶ 179.

[18] Am. Compl. ¶ 14; Defs.' Nautic Partners IX, L.P., Nautic Partners, LLC and C. Corey's Answer to Verified Am. Compl. (Dkt. 92) ¶ 14; Defs. Vistria Fund III, L.P., The Vistria Group, LP, D. Schuppan, and TVG NP Homecare Topco, LP's Answer to Verified Am. Compl. (Dkt. 94) ¶ 14; Nautic Defs.' Opp'n Ex. 9.

[19] Dkt. 1. Anthony is a non-party in this action.

## II.    LEGAL ANALYSIS

Currently before me is the plaintiffs' motion to compel the defendants to produce in full certain documents redacted or withheld as privileged.[20]  The plaintiffs ask that I order the defendants to produce "all communications prior to August 2022 with April Anthony and her attorneys (including [Ropes]) concerning [her] investment in or employment by the New Venture."[21]

The plaintiffs say that Nautic and Vistria's invocation of a shared privilege with Anthony reveals they are trying to "have it both ways."[22]  On one hand, the defendants maintain that after the Encompass Health bid expired in February 2021, Nautic, Vistria, and Anthony were not partners until she officially joined the New Venture in August 2022.  They aver that Anthony, Nautic, and Vistria were simply "consider[ing] ways of working together in the future."[23]  On the other hand, the defendants claim privilege over communications with Anthony predating August 2022.

---

[20] Dkt. 238.

[21] [Proposed] Order Granting Pls.' Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged (Dkt. 238).

[22] Pls.' Mot. ¶ 7.

[23] Pls.' Mot. Ex. 16 (letter from Nautic's counsel).

Nautic and Vistria reject the plaintiffs' casting of their pre-August 2022 relationship with Anthony. They insist that "Anthony, Vistria, and Nautic shared common legal interests protected by the joint-client and common-interest privileges."[24] And they argue that the joint client relationship continued after the expiration of the early 2021 proposal to acquire Encompass Health while the three explored "a joint investment platform in light of Anthony's restrictive covenants."[25]

Broadly speaking, then, I must resolve whether Ropes' legal advice to Nautic and Vistria about the New Venture can be withheld as privileged. To be clear, this query does not involve every communication with Ropes that Nautic and Vistria included on their privilege logs. The plaintiffs are not seeking documents from the January 2021 to February 12, 2021 period concerning the bid to acquire Encompass Health.[26] Nor are they seeking every withheld document exchanged between Ropes and Nautic and/or Vistria regarding the Topco acquisitions.[27] Rather, they seek "pre-

---

[24] Nautic Defs.' Opp'n ¶ 11.

[25] *Id.* ¶ 17.

[26] Pls.' Reply in Supp. of Mot. to Compel the Produc. of Docs. Improperly Redacted and Withheld as Privileged (Dkt. 304) ("Pls.' Reply) ¶ 3 ("Plaintiffs are not disputing the assertion of privilege over communications pertaining to the Encompass Home Health bid, which expired by its terms in mid-February 2021."); Hr'g Tr. 10.

[27] Hr'g Tr. 10.

August 2022 communications with Anthony or [Ropes, as a 'conduit' for Anthony] relating to Anthony's role at the New Venture."[28]

This subset of documents breaks down into two main categories. The first are those prepared in and around February 2021 regarding a draft investment term sheet and Anthony's restrictive covenants, which I refer to as the "Term Sheet Documents."[29] The second are what I call the "Sponsorco Documents": those from June and July 2021 about structuring Topco's acquisitions of the three home healthcare companies.[30] I begin with an overview of the overarching legal principles at play before considering each category of documents and discussing next steps.

### A.     The Common Interest and Joint Client Doctrines

The attorney-client privilege protects "communications made for the purpose of facilitating the rendition of professional legal services to the client" that are intended to be confidential.[31] Generally, disclosure of privileged information to a

---

[28] Pls.' Reply ¶ 17.

[29] *See supra* notes 8 & 9 (providing a non-exhaustive list of representative log entries) and accompanying text. This category mostly consists of documents post-dating the expiration of the Encompass Health bid but may also include a small number of documents from early February 2021. *See* Hr'g Tr. 56-58. The documents from March 2021 mentioned above are included in this category. *Supra* note 8.

[30] *See supra* note 14 (providing a non-exhaustive list of representative log entries) and accompanying text. There could potentially be documents from a slightly earlier or later time period that fall into this category.

[31] D.R.E. 502; *see also Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 713 (Del. Ch. 1976) ("The attorney-client privilege protects the communications between

third party waives the attorney-client privilege.[32]  The common interest doctrine, an extension of the attorney-client privilege, provides an exception.

As codified in Rule 502 of the Delaware Rules of Evidence, communications "by the client . . . or the client's lawyer" to another lawyer "representing another in a matter of common interest" may be withheld if the communication was "made for the purpose of facilitating the rendition of professional legal services."[33]  This exception to the general rule of waiver is not broad; the common interest must involve "primarily legal issues."[34]  The doctrine "does not protect communications between parties, or even between their attorneys, when those communications primarily concern 'a common commercial objective.'"[35]

---

a client and an attorney acting in [their] professional capacity where the communications are intended to be confidential, and the confidentiality is not waived.").

[32] *See The Cove on Herring Creek Homeowners' Ass'n, Inc. v. Riggs*, 2001 WL 1720194, at *3 (Del. Ch. Dec. 28, 2001).

[33] D.R.E. 502(b); *see also* Restatement (Third) of the Law Governing Lawyers § 76(1) ("If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client . . . is privileged[.]").

[34] *In re Lululemon Athletica Inc. 220 Litig.*, 2015 WL 1957196, at *9 (Del. Ch. Apr. 30, 2015).

[35] *Glassman v. Crossfit, Inc.*, 2012 WL 4859125, at *3 (Del. Ch. Oct. 12, 2012) (quoting *Titan Inv. Fund II, L.P. v. Freedom Mortg. Corp.*, 2011 WL 532011, at *4 (Del. Super. Feb. 2, 2011)).

The common interest privilege concerns separately represented clients.[36]

Where co-clients seek to protect privileged communications with their shared

counsel, a joint client privilege may attach.[37] A joint client relationship "is limited

by 'the extent of the legal matter of common interest.'"[38] "If counsel simultaneously

represents two parties to the same transaction who do not share a common legal

interest, privilege does not attach."[39]

Here, the defendants predominately invoke the joint client privilege.[40] For

purposes of resolving the Motion, though, the differences between common interest

---

[36] *See Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332, at *8 (Del. Super. Aug. 12, 2009) ("[S]eparately represented clients sharing a common legal interest may, at least in certain situations and under the close supervision of counsel, communicate directly with one another regarding that shared interest."); *see also* D.R.E. 502(b)(3).

[37] *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (applying Delaware law and explaining that "[w]hen co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes."); Restatement (Third) of the Law Governing Lawyers §75(1) ("If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged and relates to matters of common interest is privileged as against third persons.").

[38] *Teleglobe Commc'ns*, 493 F.3d at 363 (quoting Restatement (Third) of the Law Governing Lawyers § 75 cmt. c.).

[39] *Buttonwood Tree Value P'rs, L.P. v. R.L. Polk & Co., Inc.*, 2021 WL 3237114, at *11 (Del. Ch. July 30, 2021).

[40] The parties' arguments center on Ropes' joint representation of Vistria, Nautic, and Anthony. The defendants appear to invoke the common interest privilege in discussing communications that included Nautic's other outside counsel. *See* Nautic Defs.' Opp'n ¶ 19. There is no suggestion that Anthony or Vistria had counsel other than Ropes.

and joint client privileges are inconsequential.[41]  Neither is a standalone privilege; the underlying communication must be confidential and "for the purpose of facilitating the rendition" of legal advice.[42]  In addition, the party asserting the privilege must meet its burden of demonstrating that the shared interest is legal—not commercial.[43]

### B.     The Term Sheet Documents

There is no dispute that Nautic, Vistria, and Anthony shared a legal interest when they were jointly bidding on Encompass Health.[44]  This particular interest expired along with the bid in mid-February 2021.  The defendants assert that, afterwards, the three continued to enjoy the protections of a joint privilege since Ropes advised them on "whether, how, and when they could together pursue an

---

[41] Delaware courts often discuss the two concepts interchangeably given the overlap. *E.g.*, *Lululemon*, 2015 WL 1957196, at *9 ("As a general rule, disclosing privileged communications to a third party will waive privilege.  One exception to that rule involves situations where a lawyer represents more than one client, or two lawyers represent different clients in a 'matter of common interest.'" (quoting D.R.E. 502(b))).

[42] D.R.E. 502(b); *see also In re Quest Software Inc.*, 2013 WL 3356034, at *4 (Del. Ch. July 3, 2013).

[43] *See, e.g.*, *Moyer v. Moyer*, 602 A.2d 68, 72 (Del. 1992) ("The burden of proving that the privilege applies . . . is on the party asserting the privilege."); *Quest Software.*, 2013 WL 3356034, at *4 ("The party attempting to withhold discovery bears the burden of showing that the communications fall within the scope of the common-interest doctrine.").

[44] Pls.' Mot. ¶ 3; Nautic Defs.' Opp'n ¶ 11.

alternative home health and hospice co-investment or venture" without violating Anthony's restrictive covenants.[45]  This argument falls short for two reasons.

First, the parties' common interests were predominately commercial. Although I do not doubt their shared desire to avoid running afoul of Anthony's restrictive covenants, the goal—at bottom—was to pursue the New Venture. "[C]ommunications about a business deal, even when the parties are seeking to structure a deal so as to avoid the threat of litigation, will generally not be privileged under the common interest doctrine."[46]  Several cases are instructive.

In *Glassman v. Crossfit, Inc.*, the Court of Chancery considered whether the common interest doctrine applied to communications between the 50% owner of Crossfit, Inc. (who was embroiled in a divorce from the other 50% owner) and a private equity firm that agreed to buy the stake.[47]  The stock sale counterparties purportedly shared legal interests in an Arizona court approving the divorce and in avoiding possible litigation with Crossfit's other owner.[48]  Vice Chancellor Glasscock rejected the defendants' argument that a common interest privilege applied because the sale "might be affected by the Arizona litigation or . . . subject

---

[45] Nautic Defs.' Opp'n ¶ 12.

[46] *Glassman*, 2012 WL 4859125, at *4.

[47] *Id.* at *1.

[48] *Id.* at *3.

to litigation."[49]  None of the defendants' privilege log descriptions suggested that the withheld communications were related to "a joint legal defense or strategy."[50] Instead, they vaguely described advice about the transaction, suggesting that the parties' interests were predominately commercial.[51]

In *Titan Investment Fund II, L.P. v. Freedom Mortgage Corp.*, the court considered whether the common interest doctrine protected legal advice shared between a mortgage finance company and one of its investors about their prospective partnership.[52]  It concluded that the proponent of the privilege had not met its burden to show a "common *legal* interest."[53]  The court noted that neither "a common commercial objective" nor a "common legal interest in receiving legal advice on the issues concerning a transaction" is sufficient "to extend the protection of the common interest doctrine."[54] As such, "[t]he parties' interests in ensuring that the transaction was structured in a way that is legally appropriate [wa]s not sufficient to warrant the extension of the common interest privilege."[55]

---

[49] *Id.* at *4.

[50] *Id.* at *3-4.

[51] *Id.* at *3.

[52] 2011 WL 532011, at *2.

[53] *Id.* at *5.

[54] *Id.* (citation omitted).

[55] *Id.*

More recently, in *American Bottling Company v. Repole*, the court considered whether a company's sharing of privileged communications with its merger counterparty (the plaintiff's parent company) post-signing and pre-closing broke privilege.[56] The plaintiff argued that the common interest privilege applied because the parties shared a legal interest in protecting the company's rights under a distribution agreement.[57] Then-Judge LeGrow concluded that the plaintiff had not demonstrated that the interest was primarily legal because "even if one aspect of [the parties'] interest was avoiding litigation, the primary focus of the interest plainly was commercial."[58]

Here, Ropes was advising Nautic, Vistria, and Anthony on a joint investment in the home healthcare and hospice industry. The parties' collective interests turned on commercial—not legal—matters. This is apparent from the bulk of the privilege log entries for the Term Sheet Documents, which discuss "board grants, anti-dilution, resignation, and MEIP vesting provisions."[59] In connection with the potential investment, Ropes also advised on "restrictive covenants in [ ] Anthony's

---

[56] 2020 WL 2394906 (Del. Super. May 12, 2020).

[57] *Id.* at *2.

[58] *Id.* at *5.

[59] Nautic Privilege Log at Row 108; *see supra* note 8; *see also Crossfit*, 2012 WL 4859125, at *3 (discussing that privilege log entries regarding commercial issues cut against finding that the documents concerned a legal interest).

employment agreement."[60]  But "[i]t is of no moment that the parties may have been developing a business deal that included as a component the desire to avoid litigation."[61]

Second, insofar as Anthony's compliance with her restrictive covenants was a legal interest, Anthony's particular interest differs from Nautic and Vistria's.  Our law does not require that common legal interests be "identical"[62] for privilege between separate parties to remain intact.  But the interests must be "substantially similar"[63]—so much that the parties "may be regarded as acting as joint venturers."[64]

Anthony, as the CEO of Encompass Health, owed contractual and fiduciary obligations to the company.  Compliance with these obligations was an interest personal to Anthony.  No such obligations were owed by Nautic or Vistria.  In this

---

[60] Nautic Privilege Log at Row 116; *see supra* note 8.

[61] *Titan*, 2011 WL 532011, at *4 (quoting *Bank of America, N.A. v. Terra Nova Ins. Co.*, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002)).

[62] *Am. Legacy Found. v. Lorillard Tobacco Co.*, 2004 WL 2521289, at *4 (Del. Ch. Nov. 3, 2004).

[63] *Rembrandt Techs.*, 2009 WL 402332, at *7 (quoting *Teleglobe Commc'ns*, 493 F.3d at 365).

[64] *Jedwab v. MGM Grand Hotels, Inc.*, 1986 WL 3426, at *2 (Del. Ch. Mar. 20, 1986) ("Rule 502(b) is a recognition that a disclosure may be regarded as confidential even when made between lawyers representing different clients if in the circumstances, those clients have interests that are so parallel and non-adverse that, at least with respect to the transaction involved, they may be regarded as acting as joint venturers.").

way, the precedent that the defendants rely on to support a shared legal interest is inapposite.

In *In re Lululemon Athletica Inc. 220 Litigation*, the court held that sharing legal advice with third parties did not waive privilege where the parties had a common legal interest in responding to a newspaper inquiry about certain stock trades.[65] The parties "were not adversaries negotiating an arm's-length transaction" but "were attempting to coordinate a statement after the Wall Street Journal raised questions about the propriety" of the trades.[66] They faced the same "questions of potential wrongdoing" and shared an interest in responding "within the parameters of the securities laws and in the reasonable anticipation that litigation might ensue."[67]

In *In re Quest Software Inc. Shareholders Litigation*, the plaintiffs argued that unredacted copies of special committee minutes could not be withheld as privileged because the minutes were shared with non-committee board members and the company's financial advisor.[68] The redacted information concerned legal perspectives on proposed transactions. The court held that the attorney-client

---

[65] 2015 WL 1957196, at *8-9.

[66] *Id.* at *9.

[67] *Id.* *Lululemon* is also unhelpful to the defendants because the interests considered by the court were—unlike those raised here—primarily legal rather than commercial. *Id.* at *9.

[68] 2013 WL 3356034, at *4-5.

privilege was not waived because the parties had mutual interests in the "potential legal risk" from the transactions, which would require the full board's approval.[69]

The parties in *Lululemon* and *Quest Software* were confronted with comparable legal risks. Here, by contrast, only Anthony owed contractual and good faith obligations to Encompass Health. Nautic and Vistria might have desired that Anthony comply with her duties to avoid litigation. But Nautic and Vistria did not owe such obligations to Encompass Health and consequently faced distinct risks.

Accordingly, the Term Sheet Documents that were shared with or communicated to Anthony must be produced.[70]

### C. The Sponsorco Documents

The analysis is different for at least some of the Sponsorco Documents, in which Nautic and Vistria sought legal advice from Ropes about structuring the three Topco acquisitions. These documents (generally) exclude Anthony.[71] Still, the

---

[69] *Id.* at *5.

[70] The defendants also have not shown that the July 2021 email chain about Anthony's noncompete that initially included and dropped her is privileged. *See supra* note 15 and accompanying text. I find it difficult to accept that Nautic or Vistria believed that this communication was in confidence relative to Anthony, given that it was a continuation of an email where advice about her obligations was conveyed to her. *See In re Info. Mgmt. Servs., Inc. Deriv. Litig.*, 81 A.3d 278, 285 (Del. Ch. 2013) ("A party's subjective expectation of confidentiality must be objectively reasonable under the circumstances.").

[71] I qualify this statement since it is possible Anthony was included on documents falling within this set.

plaintiffs maintain that Nautic and Vistria could not have reasonably believed that these communications with Ropes were confidential given Ropes' representation of Anthony.

I disagree. Ropes represented Anthony at various points,[72] but it had a separate relationship with Vistria. Vistria's founding partner and co-CEO testified at his deposition that Ropes has been Vistria's outside counsel "for a long time."[73] By the time that the Topco acquisitions were being explored, Nautic had likewise engaged Ropes to jointly represent it with Vistria.[74] I have no reason to believe that Ropes was disqualified from representing Nautic and Vistria on the acquisitions due to its relationship with Anthony.

The defendants have sufficiently demonstrated that Ropes' advice on structuring the acquisitions is privileged as to Nautic and Vistria.[75] The Sponsorco Documents were part and parcel of this deal-related advice. Nautic and Vistria could

---

[72] Ropes had represented Anthony as early as 2014 in a separate transaction and afterwards in employment-related matters with the plaintiffs. *See* Pls.' Mot. ¶ 17 n.4; Pls.' Mot. Ex. 18; *see also id.* Exs. 19-20.

[73] Vistria Opp'n Ex. F (Excerpt, Kirkpatrick Tr.).

[74] *See supra* note 13 and accompanying text. Anthony is not a party to this engagement letter.

[75] Of course, this assumes that the documents were attorney-client privileged in the first place. *See Titan*, 2011 WL 532011, at *3 ("The presence of a lawyer does not transform a non-privileged communication into a privileged one[.]").

reasonably have expected that such privileged communications with their counsel would not be disclosed to Anthony.[76]

The plaintiffs say that they are not asking for the production of emails about deal structure or related due diligence.[77] Rather, they seek documents withheld for privilege pertaining to "Anthony's role at the New Venture."[78] They focus on certain emails among Ropes, Vistria, and Nautic with the subject "Equity Documents," which they suspect concern Anthony's equity in the New Venture. But Delaware counsel for the defendants represent that the documents relate to equity in Sponsorco in connection with the Topco acquisitions, the first of which was set to close in July.[79] The defendants' privilege logs support this assertion.[80]

---

[76] *See* D.R.E. 502(a) ("A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.").

[77] Hr'g Tr. 64-65.

[78] Pl.'s Reply ¶ 17.

[79] *See* Hr'g Tr. 42-44, 52-54. Some of these documents may no longer be at issue. *See id.* at 43 ("This was the category of documents we mooted."). The defendants were also apparently, during this time, considering whether Anthony would invest in Sponsorco if and when she invested. *Id.* at 52-53. But counsel represents that Anthony was not included in the discussion until later. *Id.*

[80] *E.g.*, Vistria Privilege Log at Row 1709 ("Confidential email providing legal advice of Ropes & Gray in the preparation of equity award agreements for the HCH, Vital and KIH Projects."); Nautic Privilege Log at Row 207 ("Confidential email chain requesting and providing confidential legal advice from outside counsel regarding revisions to capital structure provisions in governance documents in connection with Homecare Holdings, Vital and Kare transactions, including but not limited to anti-dilution provisions.").

To the extent that the defendants withheld documents pertaining to Anthony's potential investment or role at the New Venture that were shared with her before August 2022, the documents should be produced.[81] Anthony was a transactional counterparty vis-à-vis Nautic and Vistria on the matter.[82] Their interests were opposed: Anthony's gain would be Nautic and Vistria's loss as equityholders. The same is true when Anthony was negotiating her potential employment at the New Venture "across the table" from Nautic and Vistria.[83]

## D. Next Steps

The above is my attempt at providing guidance so that the parties can productively meet and confer about the documents that can be withheld or must be produced. I do not pretend to know the full universe of documents on the defendants' privilege logs falling into the two categories I analyzed, and there are undoubtedly other documents around the edges. My references to specific log

---

[81] *See* Pls.' Reply ¶ 15; Nautic Opp'n ¶ 13. That is, if the "equity documents" were about Anthony's equity and disclosed to her, privilege was waived.

[82] *See Buttonwood*, 2021 WL 3237114, at *9 (concluding that no privilege existed between a CEO and the company as counterparties to a self-tender); *In re Cote d'Azur Est. Corp.*, 2022 WL 17574747, at *12 (Del. Ch. Dec. 12, 2022) ("When parties are engaged in adversarial negotiation, they do not share a common interest sufficient to support privilege.").

[83] *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Servs. of Cincinnati, Inc.*, 1995 WL 347799, at *2 (Del. Ch. May 17, 1995) (holding that "employment negotiations" between the company and an employee were not privileged). Any Term Sheet Documents of this nature would not be privileged for similar reasons.

entries should not be read as an edict on whether the corresponding documents are privileged. Rather, the defendants' counsel should re-review them (and similar or related documents) to make privilege calls consistent with this decision. That process should begin as soon as possible.

At present, I decline to order the defendants to undertake a complete re-review of the roughly 8,000 logged documents. The parties should cooperatively attempt to identify specific criteria that the defendants can use to guide their reassessment of the withheld documents.[84] If this proves ineffective, we can revisit the scope of the review.

Finally, if there are remaining disputes over specific log entries after the parties meet and confer, I invite a joint letter outlining the disagreements. I will likely undertake an *in camera* review of the challenged documents and render a prompt decision on whether production is warranted.

---

[84] For example, they can review documents copying Anthony, run certain search terms about the covenants and term sheet, and skip due diligence materials. If the defendants' counsel find that a complete re-review is more effective, they are welcome to proceed.

## III.   CONCLUSION

The Motion is granted in part and denied in part.  The parties are directed to

proceed as described above.  To the extent necessary for this decision to take effect,

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor